RICHARD L. HOLMES, Retired Appellate Judge.
In December 1995 James B. Graham filed a multi-count complaint against numerous defendants, including David Kahn and Company; David Kahn, individually; and Troy Highway Retail Properties, Inc. (hereinafter collectively referred to as Kahn). David Kahn is the owner of Troy Highway Retail Properties, Inc. David Kahn also owns David Kahn and Company, a real estate company which is the managing agent for Troy Highway Retail Properties, Inc.
In count four of his complaint Graham alleged the following, in pertinent part: ■
“[Graham] claims possession from [Kahn] of the above described property, that is:
“All ‘road stripe grinding machines’ and ‘such machines in the process of manufacture.’ Also, all ‘materials, supplies and equipment, used as components in manufacturing and assembling such machines.’ ”
Graham also alleged that Kahn had “converted to [his] own use the property described above in which [Graham] had a valid and perfected security interest in the amount of eighty thousand dollars ($80,000.00).” Graham requested that the trial court require Kahn either to return the property or to compensate Graham for the value of the property.
Kahn filed an answer, denying that Graham was entitled to possession of the property. Kahn also asserted that he had a right to possess the property and that his right was superior to any right or claim of interest asserted by Graham.
Both Kahn and Graham filed summary judgment motions and responses in opposition to each other’s summary judgment motion. After a hearing the trial court issued an order, denying Graham’s summary judgment motion and granting Kahn’s summary judgment motion in Kahn’s favor. The trial court certified this judgment as final for purposes of appeal, pursuant to Rule 54(b), Ala. R. Civ. P.
Graham appeals. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
On appeal Graham contends that the trial court committed reversible error when it granted Kahn’s summary judgment motion in Kahn’s favor.
Initially, we would note that Rule 56(c), Ala. R. Civ. P., provides that a summary judgment is appropriate in situations where no genuine issue of any material fact exists and the movant is entitled to a judgment as a matter of law. It is well settled that the moving party has the burden of establishing that no genuine issue of a material fact exists and that all reasonable uncertainties regarding the existence of a genuine issue of a material fact must be resolved against the moving party. Porter v. Fisher, 636 So.2d 682 (Ala.Civ.App.1994).
Our review of the record reveals the following pertinent facts: In 1990 Graham and Lennon Whitlow, one of the named defendants, became acquainted through their work. In approximately 1992 or 1993 Graham and Whitlow entered into an oral agreement, in which Graham furnished the funds for Whitlow to use in building a “prototype” grinder (for use in removing old stripes from road surfaces and parking lots).
Several things occurred in April 1994: First, on April 1,1994, the “prototype” grinder sold for $25,000, and Graham received reimbursement for his investment of $20,000.
Second, Graham and Whitlow orally agreed that Graham would provide the financing to purchase the parts and materials required to build four additional grinders and that Whitlow would use his “know how” to build these grinders. Whitlow and Graham established accounts with various suppliers in Graham’s name. When Whitlow needed parts and/or materials to build the grinders, he would order from the suppliers and Graham would pay the invoices. Graham testified that while he agreed to finance the project, he limited his financial backing to $80,000 ($20,000 x 4 grinders).
*434 Last, on April 5, 1994, Whitlow executed a lease with Troy Highway Retail Properties, Inc., for warehouse space to be used as his manufacturing facility. The period of the lease ran from April 1, 1994, to March 31, 1997, with the rent due on the first of each month.
Thereafter, Whitlow began to order the necessary parts and materials to build the grinders. Whitlow stored these parts and materials at the leased warehouse space and began to assemble the grinders.
On August 25, 1994, Graham and Whitlow formalized their prior oral agreement in a written agreement. We would note that Graham and Whitlow executed this written agreement several months after Whitlow had begun to assemble the grinders. The agreement stated the following, in pertinent part:
“1. GRAHAM will lend money and purchase materials for use in manufacturing grinders or road stripe removing machines up to a total of Eighty Thousand Dollars ($80,000.00) for four such machines.
[[Image here]]
“3. WHITLOW will execute a promissory note promising to repay GRAHAM upon completion and sale of said machines.
“WHITLOW will take title to the materials, supplies and equipment and will execute a security agreement, granting to GRAHAM a security interest in the materials and completed machines until GRAHAM has been paid in full for such materials and machines.”
Whitlow also executed a promissory note in the amount of $80,000 and a UCC financing statement, which granted Graham a security interest in the “[r]oad stripe grinding machines, such machines in process of manufacture, and materials, supplies, and equipment used as components in manufacturing and assembling such machines.” In September 1994 Graham filed the UCC financing statement with the probate office and the secretary of state’s office.
There was testimony that Whitlow failed to pay rent on the warehouse space after August 1994. Whitlow completed and sold only one grinder, and a dispute arose between Graham and Whitlow regarding the sale of this grinder. Eventually, Graham informed Whitlow that he was terminating his financial backing.
On August 18, 1995, Graham sent his son to Montgomery to pick up the parts, materials, and equipment on which Graham had a perfected security interest. Kahn advised Graham’s son that Kahn would not allow the property to be moved from the warehouse space because Kahn had a landlord’s lien on the property for past-due rent. Thereafter, Graham filed the present action.
The trial court’s order stated the following, in pertinent part:
“Both Kahn and Graham claim to have a priority lien on the goods in Whitlow’s possession. The issue presented for determination is whether a perfected security interest in the equipment has priority over a landlord’s lien on the equipment for rent due....
“It is undisputed that payment is owed to Kahn for rent of the building. It is also undisputed that Graham has a perfected security interest in the equipment. [Ala. Code 1975, § ]7 — 9—310, governs priority of landlord liens and security interests.... It is undisputed here that the security interest was not perfected until several months after the property was brought on the premises.
[[Image here]]
“Based on the foregoing, the court is of the opinion that the landlord’s lien here has priority over the secured party’s interest in the goods and that Kahn is entitled to judgment as a matter of law.”
Ala.Code 1975, § 35-9-60, states the following, in pertinent part:
“The landlord of any storehouse, dwelling house or other building shall have a lien on the goods, furniture and effects belonging to the tenant, and subtenant, for his rent, which shall be superior to all other liens, except those for taxes, and except as otherwise provided in section 7-9-310(2).”
Ala.Code 1975, § 7-9-310(2), states the following:
“Priority conflicts between a landlord’s lien for rent arising by operation of law *435 and a security interest in collateral other than crops brought on leased premises shall be determined as follows:
“(a) If the security interest attaches after the property is brought on the premises the landlord’s lien has priority over the security interest;
“(b) If the security interest attaches before the property is brought on the premises the security interest has priority over the landlord’s lien from the time the security interest is perfected or the landlord has notice of the security interest, whichever first occurs; except that if the secured party files with respect to a purchase money security interest before or within 20 days after the debtor receives possession of the collateral, the security interest takes priority over the landlord’s lien.”
As previously noted, the trial court stated, “It is undisputed here that the security interest was not perfected until several months after the property was brought on the premises.” However, our review of the record reveals that while there are invoices from the various suppliers which are dated prior to Graham’s September 1994 perfection of his security interest, there are also invoices from the various suppliers which are dated after Graham’s September 1994 perfection of his security interest.
The record before this court is not a paragon of clarity, at least as it relates as to what the trial court considered when granting Kahn’s summary judgment motion. However, as noted above, the record before this court clearly reveals that there are invoices dated after September 1994 for parts and materials stored in the leased warehouse space. These invoices are contained in Graham’s answers to first interrogatories and requests for production, which were before the trial court.
Consequently, Kahn’s landlord’s lien was not superior to Graham’s security interest in all of the property located in the warehouse space, because the record reveals that Whit-low ordered some of the property stored at the warehouse space after Graham perfected his security interest.
In light of the foregoing, the trial court’s judgment is due to be reversed and the cause remanded for proceedings consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of Ala.Code 1975, § 12-18-10(e).
REVERSED AND REMANDED. ’
All the Judges concur.